PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| HERMAN HALE, *et al.*, | ) | |
| | ) | CASE NO. 1:10CV00867 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| ENERCO GROUP, INC., *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** [Resolving ECF No. 77.] |

Plaintiffs have moved the Court to certify a nationwide class in a lawsuit seeking to recover damages arising out of thousands of consumer transactions involving allegedly defective heaters. These heaters are not alleged to have caused any personal or property damage. Rather, Plaintiffs seek compensation for economic losses sustained at the point of purchase, when they and other consumers received a product whose cost did not reflect its true value due to the purported defect.

The Court has reviewed Plaintiffs' memorandum of law, the responsive briefs, the attached exhibits and the governing legal principles. For the reasons provided below, the Court denies Plaintiffs' Motion for Class Certification. ECF No. 77.

## I. **Factual and Procedural History**

On August 1, 2011, Plaintiffs Herman Hale and Tommy Jackson filed a Second Amended Class Action Complaint (ECF No. 62) alleging the following facts.[1] Defendants Enerco Group,

---

[1] Plaintiffs invoke the jurisdiction of this Court on the basis of 28 U.S.C. § 1332(d)(2), which confers federal district courts original jurisdiction over class actions in which any member of a class of plaintiffs is a citizen of a state different from any defendant, and the amount in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs.

(1:10cv867)

Inc., Enerco Technical Products, Inc. and Mr. Heater, Inc. (collectively "Enerco") design, market and sell "infrared liquid propane gas-fired vent-free heaters."  Defendant CSA America, Inc. ("CSA") is a nonprofit corporation that tested these heaters for compliance with performance standards promulgated by the American National Standard Institute ("ANSI").  Defendant Tractor Supply Co. ("TSC") is a retail distributor of Enerco products.  Plaintiffs are individual consumers who purchased Enerco's infrared liquid propane gas-fired vent-free heaters from TSC.

Plaintiffs allege that these heaters have a design flaw that is exhibited by the "flashing" of gas flames beyond the combustion chamber during the heater's ignition cycle.  According to Plaintiffs, this defect was known when Enerco and CSA tested the heaters; yet, CSA certified that the heaters complied with ANSI standards requiring, *inter alia*, that flames shall not flash outside the combustion space.  Plaintiffs aver that CSA fraudulently permitted Enerco to use its imprimatur of compliance in Enerco's promotion of the heaters, and that Enerco falsely represented the heaters were safe and compliant with ANSI standards.  Based upon these allegations, Plaintiffs assert common-law claims of fraud, conspiracy to defraud, negligent failure to warn and negligence in the design, testing and certification of the heaters.

In its Answer, CSA admitted that it tested the heaters in question and issued a certificate of compliance permitting Enerco to place CSA's seal on the heaters.  ECF No. 65 at 4.  Enerco admitted that it distributed materials with its heaters representing they were ANSI-compliant and safe if properly used.  ECF Nos. 66 at 3; 67 at 4; 68 at 3.  Defendants denied the remaining material allegations of the Second Amended Class Action Complaint.  ECF Nos. 64, 65, 66, 67, 68.

2

(1:10cv867)

Upon the Court's suggestion (ECF No. 97 at 9), the parties submitted nineteen randomly selected Enerco vent-free heaters, representing a cross-section of different models, to be tested by an independent laboratory.  ECF Nos. 51 at 1; 77-2 at 4.  The object of the test was to determine whether the alleged "flash-outs" could be observed with respect to those units.  ECF No. 77-2 at 5.  The laboratory concluded that each of the infrared liquid-propane models, representing ten out of the nineteen units tested, exhibited at least one occurrence in which flames reached beyond the combustion space when tested under a variety of conditions.[2]  ECF No. 77-2 at 6.

Thereafter, on December 14, 2011, Plaintiffs moved to certify the following class of consumers who, like Plaintiffs, purchased an Enerco-made infrared liquid propane gas-fired heater (henceforth "heater"):

> All persons who purchased and still own an infrared Mr. Heater liquid propane gas-fired heater with model numbers HSVFIR30LPT, HSVFIR20LPT, HSVFIR10LPT, TSVFIR30LPT, TSVFIR20LPT, TSVFIR10LPT, VF30KRADLP, VF20KRADLP, VF10KRADLP, MHVFIR30LPT, MHVFIR20LPT and MHVFIR10LPT at any time during the years 2005 to the present in the State of Ohio, as well as any other state in the United States.

ECF No. 77 at 1.  In support of its Motion, Plaintiffs filed a memorandum of law.  ECF No. 77-1.  Enerco, CSA and TSC each filed opposition briefs on January 25, 2012.  ECF Nos. 79, 81, 82.  Plaintiffs filed a Reply (ECF No. 85) to which Defendants filed a Sur-reply.  ECF No. 86-1.  Oral argument was held before a United States magistrate judge on August 24, 2012.  ECF No. 97.

## II.  Legal Standard

The class action is a well known exception to the general rule that litigation is conducted

---

[2] The natural gas and blue flame units did not exhibit "flash-outs."

(1:10cv867)

by and on behalf of the individual named parties only. *Califano v. Yamasaki*, 442 U.S. 682, 700-701, 99 S. Ct. 2545, 61 L. Ed. 2d 176 (1979). "'In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.'" *Eisen v. Carlise & Jacquelin*, 417 U.S. 156, 178, 94 S. Ct. 2140, 40 L. Ed. 2d 732 (1974) (*quoting Miller v. Mackey International*, 452 F.2d 424, 427 (5th Cir. 1971)). Rule 23 of the Federal Rules of Civil Procedure was designed to test whether certification of the class would promote the objectives of judicial economy and efficiency as well as affording aggrieved persons a remedy if it is not economically feasible to obtain relief through the traditional framework of multiple individual damage actions. *See Gunnells v. Healthplan Services, Inc.*, 348 F.3d 417, 424 (4th Cir. 2003), *cert. denied*, 542 U.S. 915, 124 S. Ct. 2837, 159 L. Ed. 2d 287 (2004).

Rule 23(a) provides that a plaintiff may obtain class certification "only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. Pro. 23 (a). "The proposed class must also meet at least one of the three requirements listed in Rule 23(b)." *In re Whirlpool Corp.*, 678 F.3d 409, 416 (6th Cir. 2012). In the present case, Plaintiffs seek certification under Rule 23(b)(3),[3] which

---

[3] Although Plaintiffs' briefs send mixed messages regarding whether they seek certification under Rule 23(b)(2), 23(b)(3), or both, Plaintiffs' counsel agreed with the magistrate judge during oral argument that "[t]his is a 23(b)(3) case." ECF No. 97 at 29. Plaintiffs' counsel then conceded that Rule 23(b)(2) could be taken "off the table." ECF No. 97 at 29.

(1:10cv867)

provides that a class action may be maintained if Rule 23(a) is satisfied, and:

> the court finds that the questions of law or fact common to class members
> predominate over any questions affecting only individual members, and that a class
> action is superior to other available methods for fairly and efficiently adjudicating
> the controversy.  The matters pertinent to these findings include: (A) the class
> members' interests in individually controlling the prosecution or defense of
> separate actions; (B) the extent and nature of any litigation concerning the
> controversy already begun by or against class members; (C) the desirability or
> undesirability of concentrating the litigation of the claims in the particular forum;
> and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

 "Subdivision (b)(3) encompasses those cases in which a class action would achieve

economies of time, effort, and expense, and promote uniformity of decision as to persons

similarly situated, without sacrificing procedural fairness or bringing about other undesirable

results."  Fed. R. Civ. P. 23(b)(3), Advisory Committee Notes to the 1966 Amendment.  To

satisfy the rule, "the issues in the class action that are subject to generalized proof and thus

applicable to the class as a whole, must predominate over those issues that are subject only to

individualized proof."  *Nicols v. Mobile Bd. Of Realtors, Inc.*, 675 F.2d 671, 676 (5th Cir. 1982);

*see* A. Conte & H. Newberg, 2 Newberg on Class Actions, § 4.23, p. 173 (4th Ed. 2002)

("predominance test expressly directs the court to make a comparison between the common and

individual questions involved in order to reach a determination of such predominance of

common questions in a class action context").  The predominance inquiry is "far more

demanding" than the commonality requirement of Rule 23(a)(2); *Amchem Products, Inc. v.

Windsor*, 521 U.S. 591, 624, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997); and, although individual

differences between class members need not be nonexistent, they "must be of lesser overall

(1:10cv867)

significance and they must be manageable in a single class action . . . ." *In re Ford Motor Co. Ignition Switch Products Liability Litigation*, 174 F.R.D. 332, 340 (D.N.J. 1997).

Finally, it is well-established that the burden rests upon the moving party to establish the right to class certification. *Beattie v. CenturyTel, Inc.,* 511 F.3d 554, 560 (6th Cir. 2007).  "Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule . . . ." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011).  The Sixth Circuit requires that "the class may only be certified if, 'after a rigorous analysis,' the district court is satisfied that these prerequisites have been met." *Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003) (*quoting General Telephone Co. v. Falcon*, 457 U.S. 147, 161, 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982)).  "Frequently, that 'rigorous analysis' will entail some overlap with the merits of the plaintiff's underlying claim.  That cannot be helped." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. at 2551.  The decision to certify a class rests upon the "broad discretion" of the court. *In re Whirlpool Corp.*, 678 F.3d at 415; *accord Randleman v. Fidelity National Title Ins. Co.*, 646 F.3d 347, 351 (6th Cir. 2011).

### III.  Discussion

In contending whether this lawsuit may proceed as a class action, the parties concentrate much of their attention on the question of whether Plaintiffs have demonstrated compliance with Rule 23(b)(3).  The Rule 23(b)(3) issue is framed by the parties as encompassing three central questions:  First, the law of which jurisdiction governs the claims alleged by Plaintiffs in their proposed nationwide class action?  Second, would predominance be affected by the application of the law of multiple jurisdictions, as opposed to the law of a single jurisdiction?  Third, may

(1:10cv867)

reliance upon Enerco and CSA's allegedly fraudulent representations be presumed in deciding whether a class action may proceed? The Court addresses each of these questions in turn.

### A. Choice-of-Law Analysis

It is undisputed that Enerco's heaters are sold throughout the United States. ECF Nos. 77-1 at 5; 84-4 at 13. TSC, one of Enerco's distributors, has alone sold the heaters in 38 states. ECF Nos. 80-12, 80-13, 80-14, 80-15. Defendants argue that the controlling law is the law of any state where the injuries occurred, that is, where economic losses were sustained by way of consumer purchase. Because the proposed class action would thus necessitate the application of the laws of all fifty states, Defendants claim that common issues of law could not predominate, and the class action would be unmanageable. ECF Nos. 79 at 18-22; 81 at 16-21; 82 at 4.

Plaintiffs "realize that application of all of Plaintiffs' claims with multiple other jurisdictions may pose a significant manageability concern to this Court." ECF No. 77-1 at 22. Plaintiffs maintain, however, that a choice-of-law analysis unequivocally demonstrates that Ohio law would apply to all members of the proposed class, except in regard to the failure to warn claim against TSC, which would be governed by Tennessee law. Thus, no manageability concerns would arise, and common legal issues would predominate. ECF No. 77-1 at 21-25.

Ohio's choice-of-law rules supply the controlling standard because "[f]ederal courts sitting in diversity must apply the choice-of-law rules of the forum state." *Muncie Power Products, Inc. v. United Technologies Automotive, Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). The parties agree (ECF No. 97 at 67) that the proper standard to be applied in this case was enunciated by the Ohio Supreme Court in *Morgan v. Biro*, 15 Ohio St. 3d 339, 474 N.E.2d 286

(1:10cv867)

(1984), which followed Section 146 of the Restatement (Second) of Conflict of Laws (1971).

> Pursuant to this section, a presumption is created that the law of the place of injury controls unless another jurisdiction has a more significant relationship to the lawsuit.  To determine the state with the most significant relationship, a court must then proceed to consider the general principles set forth in Section 145.  The factors within this section are: (1) the place of the injury; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; (4) the place where the relationship between the parties, if any, is located; and (5) any factors under Section 6 which the court may deem relevant to the litigation.  All of these factors are to be evaluated according to their relative importance to the case.

Morgan v. Biro, 15 Ohio St.3d at 342.  The factors of Section 6 of the Restatement (Second) of Conflict of Laws include the needs of the interstate and international systems; the relevant policies of the forum state; the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue; the protection of justified expectations; the basic policies underlying the particular field of law; certainty, predictability and uniformity of result; and ease in the determination and application of the law to be applied.  Id. at 342 n.6.

There is no disagreement among the parties that the place of injury is found within any jurisdiction where a potential class member purchased an Enerco heater; after all, the purchase precipitates the loss.  Nor is it disputed that the domicile and residence of the potential class m.embers are scattered across the fifty states.  Furthermore, it has been admitted that (1) Enerco is comprised of entities incorporated in Ohio and whose principle place of business is in Ohio (ECF Nos. 66 at 2; 67 at 3; 68 at 2); (2) CSA is a Delaware corporation whose principal place of business is in Ohio, as well (ECF No. 65 at 3); and (3) TSC is a Delaware corporation whose principal place of business is in Tennessee.  ECF No. 64 at 3.

Plaintiffs argue that Morgan v. Biro dictates that Ohio law should govern the claims of

8

(1:10cv867)

every potential class member because Ohio, as the jurisdiction where Enerco and CSA are located, has a "strong interest" in the regulation of their conduct.  ECF No. 85 at 11.  This conduct includes the decision-making related to the design and testing of the heaters, the purportedly fraudulent certification and the conspiracy to defraud consumers.  ECF No. 77-1 at 22.

Curiously, Plaintiffs say nearly nothing about the interest of an individual state to protect and compensate residents and consumers who have been defrauded or injured within its borders. Although Ohio undoubtedly has an important interest in regulating the tortious conduct of its resident corporations, this Court has observed that "[i]n choosing between these two policies, the Ohio Supreme Court has suggested the former carries more weight." *Byers v. Lincoln Elec. Co.*, 607 F. Supp. 2d 840, 852 (N.D. Ohio 2009) (noting that Ohio 's choice-of-law principles regard the place of injury as "the most important" factor).  Similarly, in another decision, a division of this Court has remarked that "[i]n a tort dispute, the law of the state in which the place of injury occurred usually controls" the litigation.  *Lichoff v. CSX Transportation, Inc.*, 218 F.R.D. 564, 573 (N.D. Ohio 2003).  The weight given to the place of injury is further apparent in the language of Section 146 of the Restatement (Second) of Conflict of Laws, which *presumes* that the law of the state where the injury occurred controls.  *See Morgan v. Biro*, 15 Ohio St.3d at 342.

The Sixth Circuit's recent decision in *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011) (Sutton, J.) illustrates this principle.  In *Pilgrim*, two individuals sought to represent a nationwide class in a lawsuit against an Ohio corporation and a Georgia corporation. The plaintiffs contended that the defendants deceptively advertised a healthcare discount program that failed to actually deliver the promised discounts, and, therefore, the defendants violated the

9

(1:10cv867)

Ohio Consumer Sales Practices Act and the common-law prohibition against unjust enrichment.

*Id.* at 944-45.  The Sixth Circuit upheld the district court's denial of class certification, in large

part, because it rejected the plaintiffs' claim that Ohio law governed the entire class.  *Id.* at 947.

Applying the choice-of-law principles enunciated in *Morgan v. Biro*, the *Pilgrim* Court reasoned:

> Gauged by these factors, the consumer-protection laws of the potential class
> members' home States will govern their claims.  As with any claim arising from
> an interstate transaction, the location-based factors [of *Morgan v. Biro*] point in
> opposite directions: injury in one State, injury-causing conduct in another;
> residence in one State, principal place of business in another.  Yet other factors
> point firmly in the direction of applying the consumer-protection laws of the
> States where the protected consumers lived and where the injury occurred.  *No
> doubt, States have an independent interest in preventing deceptive or fraudulent
> practices by companies operating within their borders.  But the State with the
> strongest interest in regulating such conduct is the State where the consumers–the
> resident protected by its consumer-protection laws–are harmed by it.*

*Id.* at 946 (emphasis added).  The Court held, in summary, that "[under] *Morgan*, the place of the

injury controls in a consumer-protection lawsuit, requiring application of the home-state law of

each potential class member."  *Id.* at 947.

Here, as in *Pilgrim*, the location-based factors do not point in any definitive direction.

Enerco and CSA conduct business principally in Ohio but CSA is a Delaware entity while Enerco

is comprised of Ohio entities.  TSC has no Ohio affiliation at all.  The injury-causing conduct

occurred primarily in Ohio but the injuries occurred all over the United States.  Furthermore, the

potential class members are residents of all fifty states.  Applying the factors of *Morgan v. Biro*,

the Court must conclude that Ohio's relationship to the claims of each potential class member is

outweighed by the relationship of the jurisdiction where that individual was injured.

This result is necessitated by our unique system of government.  It is well-understood that

10

(1:10cv867)

within our federal system each state possesses the characteristics of a sovereign entity; *see*

*Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54, 116 S. Ct. 1114, 134 L. Ed. 2d 252 (1996);

and, consequently, "the idea that 'one state's law would apply to claims by consumers throughout

the country . . . is a novelty.'" *Pilgrim v. Universal Health Card, LLC*, 660 F.3d at 947 (*quoting In

re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1016 (7th Cir.) (Easterbrook, J.), *cert. denied*, 537

U.S. 1105, 123 S. Ct. 870, 154 L. Ed. 2d 774 (2003)).  As a matter of fact, the Restatement

espouses the idea that "the resolution of a conflict-of-laws problem should 'further harmonious

relations between states and . . . facilitate commercial intercourse between them.'" *Piamba Cortes

v. American Airlines, Inc.*, 177 F.3d 1272, 1301 (11th Cir. 1999) (*quoting* Restatement (Second)

Conflict of Laws, § 6, comment d.), *cert. denied*, 528 U.S. 1136, 120 S. Ct. 980, 145 L. Ed. 2d

930 (2000).  It is difficult to imagine how Plaintiffs' desire to impose the law of a single

jurisdiction upon all jurisdictions where large-scale injuries occurred facilitates such relations.  If

anything, shielding foreign corporations from the laws of states where they caused harm is not

only contrary to justified expectations, but it has an antagonizing effect upon interstate commerce

by making states wary of outside companies who transact business within their borders.

Furthermore, the position advanced by Plaintiffs would frustrate the tort policies of  individual

states.  Under Plaintiffs' approach, companies could evade local laws by simply by locating

themselves in jurisdictions whose torts schemes are deemed more favorable to their interests.

   That *Pilgrim* involved a statutory scheme does not make it distinguishable.  The plaintiffs

in *Pilgrim* asserted a common law claim, as well.  Moreover, it is clear that a choice-of-law

analysis accounts for a state's interests and policies as they are expressed through the common

(1:10cv867)

law.  In *Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308 (5th Cir. 2000), the Fifth Circuit decertified a nationwide class action involving plaintiffs who alleged that they suffered economic losses from purchasing defective handguns.  In the proceedings below, the district court concluded that Georgia was the locus of the conduct causing the injury because the guns at issue were imported, assembled and tested for quality control in that state.  *Id.* at 312.  After counting the contacts the defendants had with Georgia, and considering Georgia's interest in regulating the defendants, the district court arrived at the determination that Georgia law should apply to the entire class.  *Id.* at 312-13.  The Fifth Circuit held, however, that the district court abused its discretion by not considering the relationship of the other interested states.  According to the Fifth Circuit, if the district court had properly considered these relationships, "it would have recognized that [the] case implicate[d] the tort policies of all 51 jurisdictions of the United States, where proposed class members live and bought [the] pistols." *Id.* at 313.  *Cf. BMW of North America, Inc. v. Gore*, 517 U.S. 559, 570, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996) ("[s]ome States rely on the judicial process to formulate and enforce appropriate disclosure requirements [pertaining to automobile distributors] . . . [while] [o]ther States have enacted various forms of legislation that define the disclosure obligations"); *United States v. Pink*, 315 U.S. 203, 248, 62 S. Ct. 552, 86 L. Ed. 796 (1942) (Stone, J., dissenting) ("it can make no difference to us whether New York has chosen to express its public policy by statute or merely by the common law determinations of its courts").

The assortment of cases cited by Plaintiffs do not persuade the Court otherwise.  None of those cases involved the same choice-of-law principles applied in *Morgan v. Biro* and, as a matter of fact, they emphasized distinctly different factors.  *See Pevets v. Crain Communications, Inc.*,

(1:10cv867)

2011 WL 2175066 (Ohio App. 6 Dist.); *In re Mercedes-Benz Tele Aid Contract Litigation*, 257

F.R.D. 46 (D.N.J. 2009); *Mazza v. American Honda Motor Co.*, 254 F.R.D. 610 (C.D. Cal. 2008);

*Ysbrand v. DaimlerChrysler Corp.*, 81 P.3d 618 (Okla. 2003); *Simon v. Phillip Morris, Inc.*, 124

F. Supp. 2d 46 (E.D.N.Y. 2000).  Notably, *In re Mercedes-Benz* has been heavily criticized within

its own district; *see Maloney v. Microsoft Corp.*, 2011 WL 5864064 at *9 (D.N.J. 2011) ("This

Court is similarly unsatisfied with the justifications provided in the *Mercedes Benz* decision" that

"New Jersey's interest in deterring certain conduct by its home state businesses . . . warrants a

practically willy-nilly imposition of New Jersey's law nationwide in disregard of the laws of other

jurisdictions" [internal quotations omitted]); and *Mazza v. American Honda Motor Co.* was

reversed upon the very ground referenced by Plaintiffs.  *See* 666 F.3d 581, 593 (9th Cir. 2012)

("The district court did not adequately recognize that each foreign state has an interest in applying

its law to transactions within its borders and that, if California law were applied to the entire class,

foreign states would be impaired in their ability to calibrate liability to foster commerce.  That this

concept was missed or given inadequate weight was error.").  Quite simply, none of the cases

presented by Plaintiffs have any binding or persuasive effect upon this Court.

### B. Effect of Applying Multiple Jurisdictions' Laws

The Sixth Circuit has recognized that there may be no predominance of common legal

issues where the laws of multiple jurisdictions apply to a class action.  *See Pilgrim v. Universal

Health Card, LLC*, 660 F.3d at 947 (because the "laws of the State where each injury took place

would govern these claims . . . no common legal issues favor a class-action approach"); *In re

American Medical Systems, Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996) ("if more than a few of the

13

(1:10cv867)

laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law").  This observation has not been confined to this Circuit.  *See, e.g., In re Bridgeport/Firestone, Inc.*, 288 F.3d at 1018 ("Because these claims must be adjudicated under the law of so many jurisdictions, a single nationwide class is not manageable"); *Szabo v. Bridgeport Machines, Inc.,* 249 F.3d 672, 674 (7th Cir.) ("Differences [in state law] cut strongly against nationwide classes"), *cert. denied*, 534 U.S. 951, 122 S. Ct. 348, 151 L. Ed. 2d 263 (2001); *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) ("[W]here the applicable law derives from the law of the 50 states, as opposed to a unitary federal cause of action, differences in state law will compound . . . the disparities among class members from the different states" [internal quotations omitted]); *Castano v. American Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996) ("In multi-state class actions, variations in state law may swamp any common issues and defeat predominance").

Confronted with *Pilgrim*, Plaintiffs abandoned their concession that the application of many states' laws pose manageability concerns.  ECF No. 77-1 at 22.  In their Reply, Plaintiffs adopt a new argument: they claim that a choice-of-law analysis is unnecessary because negligence and fraud do not vary from state-to-state.  ECF No. 85 at 9-10.  Since these laws are uniform across jurisdictions, Plaintiffs argue, the Court may simply apply Ohio law for the entire class.

A similar argument was made in *Walsh v. Ford Motor Co.*, 807 F.2d 1000 (D.C. Cir. 1986), *cert. denied*, 482 U.S. 915, 107 S. Ct. 3188, 96 L. Ed. 2d 677 (1987), a decision written by Judges Harry Edwards and Ruth Bader Ginsburg.  In that case, it was claimed by the class movants that there were no variations in state warranty laws that could defeat legal predominance, and,

14

(1:10cv867)

therefore, a multi-state class action should be certified.  *Id.* at 1017.  The Court, however, admonished that "[a] court cannot accept such an assertion 'on faith.'"  *Id.*  Rather, "to establish commonality of the applicable law, nationwide class action movants must creditably demonstrate, through an 'extensive analysis' of state law variances, 'that class certification does not present insuperable obstacles.'"  *Id.* at 1017; *see Zinser v. Accufix Research Institute, Inc.*, 253 F.3d at 1189 (party seeking "certification of a nationwide class for which the law of forty-eight states potentially applies . . . bears the burden of demonstrating a suitable and realistic plan for trial of the class claims" [internal quotations omitted]); *Castano v. American Tobacco Co.*, 84 F.3d at 742 ("Given the plaintiffs' burden [on class certification], a court cannot rely on assurance of counsel that any problems with predominance or superiority can be overcome").

Plaintiffs have provided nothing to the Court beyond mere "assurances" and a generic description of the duty of care owed by product sellers and manufacturers.  ECF No. 85 at 9. Their demonstration falls woefully short of the "extensive analysis" of state law variances required to inform the Court about the feasibility of class treatment.  It has been observed, moreover, that "[t]he law of negligence, including subsidiary concepts such as duty of care, foreseeability, and proximate cause, may . . . differ among the states only in nuance . . . [b]ut nuance can be important, and its significance is suggested by a comparison of differing state pattern instructions on negligence and differing judicial formulations of the meaning of negligence and the subordinate concepts."  *Matter of Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300 (7th Cir. 1995) (Posner, J.) (holding that district judge abused discretion in certifying multi-state class upon determination that jury could be instructed using uniform negligence standard),

15

(1:10cv867)

*cert. denied*, 516 U.S. 867, 116 S. Ct. 184, 133 L. Ed. 2d 122 (1995); *see Harding v. Tambrands, Inc.*, 165 F.R.D. 623, 629 (D. Kan. 1996) ("law of negligence is not uniform and cannot be abstracted into a single instruction").  If the proposed class were to be certified, the Court anticipates that the jury would be inundated with voluminous instructions expressing diverse formulations not just of negligence but of the defenses associated with negligence.  *See, e.g.*, *Byers v. Lincoln Elec. Co.*, 607 F. Supp. 2d at 843 (noting some states adhere to contributory negligence while others follow comparative negligence).  The same could be said of the fraud claims.  *See, e.g., In re Ford Motor Co. Vehicle Paint Litigation*, 182 F.R.D. 214, 224 (E.D. La. 1998) (regarding fraud, "states have adopted at least three different standards on the question of reliance . . . .  An accurate jury charge would have to reflect the proper definition and tests for each type of reliance under each state's laws"); *see also Castano v. American Tobacco Co.*, 84 F.3d at 743 (noting "[s]tates impose varying standards to determine when there is a duty to disclose facts").  Furthermore, Plaintiffs seek punitive damages (ECF No. 62 at 12) even though not all states permit such damages, and those which do require varying standards of culpability.  *See Cooley v. Lincoln Electric Co.*, 776 F. Supp. 2d 511, 522 (N.D. Ohio 2011) (*citing* L. Nugent, R. Hammesfahr & R. Blatt, Punitive Damages: A State-By-State Guide to Law and Practice § 3:2 (2009 ed.)).  The Court thus looks with a skeptical eye at the manageability of the proposed nationwide class, particularly because "such a class is rarely, if ever, appropriate where each plaintiff's claim will be governed by the law of his own State." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d at 948.  The burden undeniably rests upon Plaintiffs to demonstrate otherwise. Yet, they have done nothing to affirmatively show that common issues of law would predominate

16

(1:10cv867)

notwithstanding the application of the laws of all fifty states to their lawsuit.

### C. Whether Reliance May Be Presumed

The third Rule 23(b)(3) issue debated by the parties is whether reliance upon CSA and Enerco's allegedly fraudulent representations and omissions is susceptible to class-wide proof. "In a typical common-law fraud case, a plaintiff must show that he or she received the defendant's alleged misrepresentation and relied on it." *In re St. Jude Medical, Inc.*, 522 F.3d 836, 838 (8th Cir. 2008).  Reliance is also an essential element of the common-law tort of conspiracy to defraud, since liability for this claim cannot exist independently from the fraud itself.  15A C.J.S. Conspiracy § 50 (2012); 16 Am. Jur. 2d, Conspiracy § 64 (2012).  For this reason, "a fraud case may be unsuited for treatment as a class action if there was material variation . . . in the kinds or degrees of reliance by the persons to whom they were addressed."  Fed. R. Civ. P. 23(b)(3), Advisory Committee Notes to the 1966 Amendment.  Federal Courts of Appeal, including the Sixth Circuit, have consistently refused to permit class treatment of fraud-based claims because individual issues of reliance must be resolved.  *See Sprague v. General Motors Corp.*, 133 F.3d 388, 398 (6th Cir.) (claims requiring "proof of what statements were made to a particular person, how the person interpreted those statements, and whether the person justifiably relied on the statements to his detriment . . . are typically inappropriate for class treatment"), *cert. denied*, 524 U.S. 923, 118 S. Ct. 2312, 141 L. Ed. 2d 170 (1998); *see also In re St. Jude Medical, Inc.*, 522 F.3d at 838 ("Because proof often varies among individuals concerning what representations were received, and the degree to which individual persons relied on the representations, fraud cases often are unsuitable for class treatment"); *Gunnells v. Healthplan Services, Inc.*, 348 F.3d at 435

17

(1:10cv867)

("the reliance element of . . . fraud and negligent misrepresentation claims [is] not readily susceptible to class-wide proof; rather, proof of reasonable reliance . . . depend[s] upon a fact-intensive inquiry into what information each [plaintiff] actually had" [internal quotations omitted]); *Sandwich Chef of Texas, Inc. v. Reliance National Indemnity Ins. Co.* 319 F.3d 205, 211 (5th Cir.) ("Fraud actions that require proof of individual reliance cannot be certified as Fed. R. Civ. P. 23(b)(3) class actions because individual, rather than common, issues will predominate"), *cert. denied*, 540 U.S. 819, 124 S. Ct. 101, 157 L. Ed. 2d 37 (2003).

In an effort to demonstrate that common issues of fact would nonetheless predominate in their lawsuit, Plaintiffs claim that proof of individual reliance upon Enerco and CSA's allegedly fraudulent statements and omissions is unnecessary. ECF No. 77-1 at 16.  Plaintiffs maintain that reliance may instead be presumed for the entire class because the misleading information–specifically, CSA's "misleading seal of ANSI compliance" that was "displayed on all ENERCO heater packaging as well as included on all instruction manuals"–was standardized and uniformly presented to all potential class members. ECF Nos. 77-1 at 16-17; 85 at 18.

Some courts have granted class certification of fraud-based claims after deciding that reliance could be presumed for the entire class.  It is worth noting, however, that "[t]he fact that courts have occasionally allowed litigants to prove reliance on a class-wide basis does not mean that all class actions alleging misrepresentation are entitled to class treatment." *Pettrey v. Enterprise Title Agency, Inc.*, 241 F.R.D. 268, 280 (N.D. Ohio 2006), *appeal dismissed*, 584 F.3d 701 (6th Cir. 2009).  Whether class reliance may be presumed in a particular case does not appear to depend on any clear rules but on common-sense judgments about its appropriateness.  *See, e.g.,*

18

(1:10cv867)

*Poulos v. Caesar World, Inc.*, 379 F.3d 654, 665 (9th Cir. 2004) (reliance may be susceptible to

class-wide proof where "there is an obvious link between the alleged misconduct and harm");

*Rodriguez v. McKinney*, 156 F.R.D. 112, 115 (E.D. Penn. 1994) ("Reliance may be presumed only

'where it is logical to do so.'").  In one case decided in this district, the Court concluded that

reliance could be presumed because "circumstantial evidence leading to legitimate inferences

'could lead a reasonable factfinder to conclude beyond a preponderance of the evidence that each

individual plaintiff relied on the defendants' representations.'"  *Stanich v. Travelers Indemnity*

*Co.*, 249 F.R.D. 506, 519 (N.D. Ohio 2008) (*quoting Klay v. Humana, Inc.*, 382 F.3d 1241, 1259

(11th Cir. 2004), *cert. denied*, 543 U.S. 1081, 125 S. Ct. 877, 160 L. Ed. 2d 825 (2005)).

    The fraud in *Stanich* was an insurer's sale of certain insurance policies while concealing

the availability of lower-price policies offering identical coverage and service.  *Stanich v.*

*Travelers Indemnity Co.*, 249 F.R.D. at 510.  The presumption of class reliance in that case seems

appropriate because there was a virtual certainty that, but for the concealment, the higher priced

policies would not have been purchased by any of the potential class members.  The cases cited by

Plaintiffs are in accord.[4]  *See Baughman v. State Farm Mutual Automobile Ins. Co.*, 88 Ohio St.

---

[4] Other cases cited by Plaintiffs are simply not relevant to the discussion.  *Portman v.*
*Akron Savings & Loan Co.*, 47 Ohio App. 2d 216, 353 N.E.2d 634 (1975) was a breach of
contract case that did not decide whether reliance could be presumed.  The court merely observed
in dictum that in some cases proof of reliance would not bar a class action suit.  *Id.* at 219.
Similarly, *Mell v. Anthem, Inc.*, 264 F.R.D. 312 (S.D. Ohio 2009), did not involve any analysis
regarding the presumption of reliance.  Finally, *Davis v. Avco Corp.*, 371 F. Supp. 782 (N.D.
Ohio 1974), was a federal securities fraud case.  It is well-established that reliance may be
presumed in federal securities fraud cases on the basis of the fraud-on-the-market theory, under
which "the capacity of the capital markets to rapidly assimilate public information into stock
prices provide[s] the basis for presuming a causal connection between a material
misrepresentation and a plaintiff's injury, even when that plaintiff may have been completely

(1:10cv867)

3d 480, 481, 727 N.E.2d 1265 (2000) (insurer sold separate insurance policies to all members of household while concealing that only one vehicle in household needed coverage in order to provide coverage for all); *Hamilton v. Ohio Savings Bank*, 82 Ohio St. 3d 67, 84, 694 N.E.2d 442 (1998) (bank misrepresented interest rate in mortgage contract and charged in excess of contract rate); *Cope v. Metropolitan Life Ins. Co.*, 82 Ohio St. 3d 426, 427, 696 N.E.2d 1001 (1998) (insurer sold replacement life insurance policies falsely classified and charged as new policies).

The cases in which courts have declined to presume reliance are equally instructive.  In *McLaughlin v. American Co.*, 522 F.3d 215, 220-21 (2nd Cir.), *abrogated in part on other grounds*, *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 128 S. Ct. 2131, 170 L. Ed. 2d 1012 (2008), the plaintiffs instituted fraud-based claims against a number of tobacco companies. The plaintiffs alleged that the defendants deceptively represented that their "light" cigarettes were healthier than their "full-flavored" cigarettes, causing the plaintiffs to buy the light cigarettes in greater quantity than they otherwise would have and at an artificially high price, resulting in overpayment for the cigarettes.  *Id.* at 221.  The district court determined that reliance could be presumed or proven on a class-wide basis because the defendants had conducted a broad marketing campaign in which the misrepresentations were made in a "'consistent, singular, uniform' fashion."  *Id.* at 223.  The Second Circuit disagreed.  Central to its reasoning was that individualized inquiries were necessary to account for consumer idiosyncrasies that factor into the

---

unaware of the misrepresentation (let alone 'relied' on it in the traditional sense.)"  *Gunnells v. Healthplan Services, Inc.*, 348 F.3d at 435.  That theory hardly seems applicable here. *See Faktor v. Lifestyle Lift*, 2010 WL 271346 at *6 (N.D. Ohio 2010) ("This case is not one of securities fraud permitting a showing of group reliance based on a fraud on the market theory.  Nor is it a case where the elements of fraud are defined by statutory interpretation to exclude reliance.").

(1:10cv867)

purchase of cigarettes. *Id.* ("Individualized proof is needed to overcome the possibility that a member of the purported class purchased Lights for some reason other than the belief that Lights were a healthier alternative–for example, if a Lights smoker was unaware of that representation, preferred the taste of Lights, or chose Lights as an expression of personal style."). The Second Circuit thus ruled that Rule 23(b)(3) had not been met and ordered decertification of the class.

Similarly, the Seventh Circuit in *Thorogood v. Sears, Roebuck and Co.*, 547 F.3d 742 (7th Cir. 2008) (Posner, J.), *cert. denied*, 130 S. Ct. 90, 175 L. Ed. 2d 28 (2009), ordered class decertification in a lawsuit brought against a manufacturer and distributor of clothes dryers. The plaintiff alleged that the words "stainless steel" imprinted on the dryers constituted deceptive advertising because the drum used to dry the clothes was not made *entirely* of stainless steel, and, therefore, it rusted and stained his clothes. *Id.* at 743-44. Judge Posner rejected the district court's conclusion that reliance could be presumed throughout the class:

> The evaluation of the class members' claims will require individual hearings. Each class member who wants to pursue relief against Sears will have to testify to what he understands to be the meaning of a label or advertisement that identifies a clothes dryer as containing a stainless steel drum. Does he think it means that the drum is 100 percent stainless steel because otherwise his clothes might have rust stains, or does he choose such a dryer because he likes stainless steel for reasons unrelated to rust stains and is indifferent to whether a part of the drum not easily seen is made of a different material?

*Id.* at 747.

In addition, the Ninth Circuit in *Poulos v. Caesar World, Inc.*, 379 F.3d at 658 affirmed the district court's denial of class certification in a lawsuit claiming that the defendants fraudulently induced the plaintiffs to play their video poker and electronic slot machines. The plaintiffs alleged that the video poker machines were designed in their appearance and labeling

(1:10cv867)

and were represented to the public as replicating the random shuffling of a standard deck when, in reality, players' chances of securing a wining hand were completely computerized. *Id.* at 665. Similarly, the plaintiffs alleged that the video slot machines were designed to appear to operate like their mechanical counterparts when, in fact, the chances of winning a pay-off were determined by a computer algorithm. *Id.* at 660-61. The Ninth Circuit held that class certification under Rule 23(b)(3) would be improper in view of the individual inquiries necessary to determine the motivations of each potential class member who played the defendants' machines. *Id.* at 664-65. That Court noted, for example, that some players may be totally unconcerned with the odds of winning, instead playing the machines as a form of entertainment or social activity, and some may play with absolutely no information regarding the odds of winning such that the appearance and labeling of the machines did nothing to influence their perceptions. *Id.* at 665-66.

The import of *McLaughlin*, *Thorogood* and *Poulos* is clear. In each case, the fraud was perpetrated upon consumers a uniform fashion. Yet, in each case Rule 23(b)(3) was not satisfied because it was necessary to conduct individual inquiries respecting whether a potential class member received the misrepresentation, how that misrepresentation was interpreted and whether the class member purchased the product or service for reasons wholly unrelated to the fraud.

Individual determinations of reliance are necessary in the present case, as well. The alleged fraud centers upon the use of CSA's "Blue Star" seal in the promotion of Enerco's heaters. The intractable problem for Plaintiffs is that it would be impossible to determine the impact of this seal upon any purchase decision without an individual inquiry into the purchaser's motivations. The record discloses the following facts. The seal is in the shape of a star with the

22

(1:10cv867)

letters "CSA" in the middle.  ECF No. 80-6 at 4.  The star is enclosed within a circle and the

words "design certified" are displayed.  ECF No. 80-6 at 4.  A typical Enerco box displays the

CSA seal in the bottom corner of the back panel, where the seal occupies about half of one

percent of the panel.  ECF Nos. 80-7 at 4; 80-11 at 3.  The remainder of the back panel features a

large picture of the heater and number of promotional statements, including "Easy-To-Clean High

Gloss Enamel"; "Battery Operated Electronic Ignition"; "Easy-to-Read Digital Temperature

Display"; "Top Mounted Thermostat Control"; "Factory Installed Blower Fan"; "Diamond Mesh

Screen For Additional Protection"; and "Built-In Oxygen Depletion Safety Shut-Off."  ECF No.

80-11 at 3.  The front of the box specifies additional information, including (1) a large picture of

the heater; (2) the Mr. Heater brand; (3) that the heater is a radiant, infrared, vent-free heater; (4)

the BTU rating; (5) that the heater operates during power outages without electricity; (6) the claim

that the heater is "99% efficient"; and (7) that it may be wall mounted.  ECF No. 80-11 at 2.  The

rest of the box includes images and descriptions of where the heater may be used as well as

statements touting the ease of installing the heater.  ECF No. 80-11 at 4-6.

It is entirely possible that a potential class member did not notice the seal prior to

purchasing the heater.  If the seal was noticed, it is equally plausible that it was not interpreted in

the manner claimed by Plaintiffs.  Certainly, the seal does not communicate that the heater is

ANSI-compliant or that flames will not flash-out during the ignition cycle.  Even if the class

member observed the seal and understood its meaning, he or she may have decided to purchase

the heater for reasons entirely unrelated to the representation.  And, even if CSA or Enerco placed

warnings on the heaters regarding the flash-outs, a consumer may well have purchased the heater

23

(1:10cv867)

anyway, on the basis of the heater's price, performance, reputation, durability, safety record, attractiveness, etc.  Significantly, Tommy Jackson, one of the class representatives, testified that although his wife noticed a flash-out two weeks after he purchased his heater, he nonetheless kept and used the heater for two more years.  ECF No. 85-1 at 4 and 8.  Jackson's behavior suggests that there were aspects about the heater that appealed to him despite the occurrence of flash-outs.

Accordingly, individual questions about reliance may not be presumed away.  Such questions are not confined to Plaintiffs' fraud claims, either.  Plaintiffs also allege that had CSA not negligently tested the heaters, CSA would not have issued its certification and, in turn, the heaters would not have been purchased.  ECF No. 62 at 11.  Whether a potential class member would have refused to purchase a heater in the absence of CSA's certification is an individual question predicated upon, among other factors, his or her unique consumer preferences.  Similarly, the resolution of whether Defendants' failure to warn proximately caused the injuries alleged requires individual inquiries, as well, because it is not at all certain that a potential class member, if warned about the flash-outs, would have declined to purchase an Enerco heater.

### D. Plaintiffs' Proposed Class May Not Be Certified Under Rule 23(b)(3)

Based on the foregoing, Plaintiffs have not demonstrated that any common issues of law or fact would predominate over the questions affecting only individual members.  The Court recognizes that the claimed damages of each potential class member are small and therefore individual lawsuits are unlikely.  This does not, however, change the fact that the present lawsuit is a particularly weak candidate for class treatment.  Nothing permits the Court to overlook the predominance requirement of Rule 23(b)(3) because individual actions would probably not be

24

(1:10cv867)

litigated.  To the contrary, the Court is obligated to conduct a "rigorous analysis"of the propriety

of class certification.  Pursuant to that analysis, the Court concludes that compliance with Rule

23(b)(3) has not been established.  Thus, analysis of the remaining elements is unnecessary.

### IV. <u>Conclusion</u>

Consistent with the reasoning above, the Court denies Plaintiffs' Motion for Class

Certification.


IT IS SO ORDERED.


  December 29, 2012                              /s/ Benita Y. Pearson

Date                                           Benita Y. Pearson

                                               United States District Judge